UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| DANVILLE CHRISTIAN ACADEMY, INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 3:20-cv-00075-GFVT |
| v. | ) ) ) | **OPINION** **&** |
| ANDREW BESHEAR, in his official capacity as Governor of Kentucky, | ) ) ) | **ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Part of the genius of the American tradition is that right from the start we were clear about what mattered.  We even made a list, the Bill of Rights.  Think of it as a catalogue of values so dear that they deserved protection from future edicts or even majorities at a moment in time.  Infringing these values is rare.  They matter that much.

This case is about one of those values—the ability we each have to follow our religious convictions without interference from the government.  Religious schools across the Commonwealth have been closed by the Governor to in-person teaching along with secular schools.  This prevents the corporate nature of religious education which is insinuated with worship, prayer, and mentoring.

Many thoughtful people believe that the reason for the Governor's action is a good one— the Commonwealth, indeed the country and the world, is facing the worst pandemic in over one hundred years.  That may be one reason to close schools.  But is it a good enough reason to keep religious schools from fully achieving their mission?

The Governor has every right to impose some restrictions on all schools, religious and secular alike. Social distancing, face masks, limits on class size, reporting requirements, and other protocols may cost money and may be inconvenient for parents and students, but we give executives increased discretion in times of crisis. But in an effort to do the right thing to fight the virus, the Governor cannot do the wrong thing by infringing protected values. So, as explained in detail below, the movants are likely to succeed on the merits of this case. The request for a Preliminary Injunction will be GRANTED.

**I**

This is not the governor's first executive order imposing restrictions in an effort to slow the spread of Covid-19. And this is not the first legal challenge to those orders. *See e.g.*, *Maryville Baptist Church, Inc.*, 957 F.3d 610 (6th Cir. 2020); *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020); *Cameron v. Beshear*, 2020 WL 2573463 (E.D. Ky. May 21, 2020). On November 18, 2020, Governor Beshear issued Executive Order 2020-969 which, in part, (1) requires all public and private K-12 schools in the state to cease in-person instruction and transition to virtual learning starting on November 23, 2020; (2) requires all middle and high schools to remain virtual until at least January 4, 2021; and (3) allows some elementary schools to resume in-person instruction between December 7, 2020, and January 4, 2021, but only if the school is not located in a "Red Zone County" and follows all expectations and best practices. [Exec. Order 2020-969.]

Plaintiff Danville Christian Academy, Inc.[1] is a Christian private school located in Danville, Kentucky, that describes its mission as "to mold Christ-like scholars, leaders, and

---

[1] The plaintiffs in this case include Danville Christian Academy and Attorney General Daniel Cameron *ex rel* the Commonwealth of Kentucky. In this order, all references to Danville Christian encompass arguments made by both Danville Christian and the Attorney General.

servants who will advance the Kingdom of God." [R. 3 at 4.] Danville Christian states that it has a sincerely held religious belief that "it is called by God to have in-person religious and academic instruction for its students." [R. 1 at 25.] Danville students must attend one of two socially distanced chapel services each week, which include "religious instruction and preaching, corporate prayer, musical worship, communal recognition, and encouragement of individual students." *Id.* at 19. Danville Christian also holds daily corporate prayer at the beginning of the school day, in addition to corporate prayer in each classroom and before lunch. *Id.*

On the afternoon of Friday, November 20, 2020, Danville Christian and the Kentucky Attorney General filed a complaint, alleging that Governor Beshear's executive order violated its constitutional rights.[2] Most prominently, Danville Christian believes that Executive Order 2020-969 violates its First Amendment rights to free exercise of religion and argues it is likely to succeed on the merits of its claims because the orders are not narrowly tailored to serve the public health interest.[3]

---

[2] In ruling on the preliminary injunction, the Court held a hearing on November 23, 2020. Danville Christian originally filed a TRO, but the Court determined that for the sake of judicial economy and given how the parties chose to proceed in briefing and filing, a preliminary injunction was more appropriate. Counsel for Danville Christian, the Attorney General, and Governor Beshear participated in the hearing. Kentucky State Treasurer Allison Ball filed an *amicus* brief in support of Danville Christian [R. 21] as did "Parents of Religious Students" [R. 23] and a group of nine religious private schools in Kentucky. [R. 19.]

[3] The executive order has yet to be enforced against Plaintiff Danville Christian, despite the fact that the order went into effect on November 23, 2020, because at oral argument the Governor agreed not to enforce the order pending resolution of this matter. However, the Court notes that there is no issue at this preliminary stage concerning Danville Christian's ability to establish standing in this challenge. *McKay v. Federspiel*, 823 F.3d 862 867 (6th Cir. 2016); *see also Michigan Gas Co. v. F.E.R.C.*, 115 F.3d 1266, 1269 (6th Cir. 1997) ("Standing 'is a qualifying hurdle that plaintiffs must satisfy even if raised sua sponte by the court.'"). To bring such a challenge, a plaintiff must sufficiently allege (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest," (2) that is "proscribed by a [law]," and (3) "there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (citation omitted). It is beyond dispute that the first two elements are easily met. As to the third element, the Court notes first that violation of the recently promulgated executive orders is a Class A misdemeanor under Kentucky law. *See* KRS § 39A.990; *see also* KRS § 532.020(2); KRS § 534.040 (setting forth the penalties for a Class A misdemeanor). And second, there is an established record of enforcement in the churches context that have violated the executive order in a similar way that Danville Christian proposes in the school context. *See Maryville Baptist Church v. Beshear*, 957 F.3d 610, 611–12 (6th Cir. 2020); *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020). Thus, it appears that Danville Christian also meets this third and final element. In sum, on the limited record before the Court, it appears that Danville Christian meets each element of the pre-enforcement standing analysis and, notably, the Governor has advanced no argument to the contrary.

## II

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (cleaned up) ("[A] preliminary injunction involv[es] the exercise of a very far-reaching power ....")).  To issue a preliminary injunction, the Court must consider: 1) whether the movant has shown a strong likelihood of success on the merits; 2) whether the movant will suffer irreparable harm if the injunction is not issued; 3) whether the issuance of the injunction would cause substantial harm to others; and 4) whether the public interest would be served by issuing the injunction.  *Overstreet*, 305 F.3d at 573 (citations omitted).

The Court of Appeals clarified that, "[w]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor."  *City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)).  However, even if the plaintiff is unable "to show a strong or substantial probability of ultimate success on the merits" an injunction can be issued when the plaintiff "at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued."  *In re Delorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).  Thus, Danville Christian must show that the foregoing preliminary injunction factors are met, and that immediate, irreparable harm will result if the injunction is not issued.

**A**

The First Amendment, applied to the Commonwealth of Kentucky through the Fourteenth Amendment, *see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law respecting an establishment of religion, or exercising the free exercise thereof," with few exceptions. U.S. Const. amend. 1. "When constitutional rights are threatened or impaired, irreparable injury is presumed." *ACLU Fund of Mich. v. Livingston Cty.*, 796 F.3d 636, 649 (6th Cir. 2015) (internal citations omitted). The Supreme Court has held "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). This is precisely what Danville Christian alleges: violation of its First Amendment rights, specifically its right to exercise its religion. [R. 1.] Precedent within the Sixth Circuit establishes that, "when a party seeks a preliminary injunction on the basis of a … violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009).

Of course, "[t]he possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community." *Crowley v. Christensen*, 137 U.S. 86, 89 (1890). The question becomes, then, whether the prohibition on in-person teaching issued by Governor Beshear amounts to "reasonable conditions" on Kentuckians' constitutional right to free exercise of their sincerely-held religious beliefs. Context is important. The orders at issue do not simply restrict religious expression; they restrict religious expression in an attempt to protect the public health during a global pandemic. As always, the Court looks to precedent in these unprecedented times.

**1**

To begin, the parties do not facially dispute that Danville Christian has a sincerely held religious belief in conducting in-person instruction.  Nevertheless, the Governor argues that the fact Danville Christian halted in-person teaching earlier during the pandemic, when faced with an infected member of its community, seriously undermines the irreparable harm requirement of a preliminary injunction.  By implication, this raises a challenge to the school's sincerity.  In response, Danville Christian argued that the halt in holding in-person instruction was a voluntary short-term act taken out of deference to the community, and now that more is known about the virus and other measures can be taken to allow classes to resume safely, it would violate Danville Christian's First Amendment rights to force the school to hold virtual instead of in-person classes.

Exercising a judgment call to close for a short period of time when far less was known about the virus cannot now effectively counter its conviction.  Danville Christian has presented evidence of the significance of in-person instruction, including the holding of weekly chapel services and corporate prayer throughout the day.  [R. 1 at 19.]  The Court is also cognizant of the role of daily in-person mentorship of religious values that occur in religious schools that is simply not as feasible in a virtual setting.  In extending the ministerial exception to private school teachers in *Our Lady of Guadalupe School v. Morrissey-Berru*, the Supreme Court expressed that in the First Amendment context, faith and education go hand in hand.  140 S. Ct. 2049 (2020).  "[E]ducating young people in their faith, inculcating its teachings, and training them to live their faith are responsibilities that lie at the very core of the mission of a private religious school."  *Id.* at 2064.  Therefore, insofar as it relates to the irreparable harm prong, the Court finds this to be sufficient to demonstrate Danville Christian's sincerely held belief.

**2**

Next, the Governor argues that this executive order "is neutral and of general applicability [and] need not be justified by a compelling interest." *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531 (1993). The Governor makes this argument by pointing to the fact that the executive order applies to all schools, both public and private. [R. 24 at 13.] However, this argument is not consistent with Sixth Circuit precedent.

The Sixth Circuit addressed a challenge to Kentucky's prohibition on gatherings for religious service earlier this year. *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020). Maryville Baptist Church held a drive-in service on Easter Sunday. *Id.* at 611. But, pursuant to the prohibition on mass gatherings and executive order closing non-essential businesses, "Kentucky State Police arrived in the parking lot and issued notices to the congregants that their attendance at the drive-in service amounted to a criminal act." *Id.* On appeal, the Sixth Circuit considered whether to stay the district court's order denying Maryville Baptist Church's motion to enjoin enforcement of these restrictions. *Id.* In its analysis, the Court observed that Maryville Baptist was likely to succeed on the merits of its claim because "[t]he way the orders treat comparable religious and non-religious activities suggests that they do not amount to the least restrictive way of regulating the churches." *Id.* at 613.

Ultimately, the Sixth Circuit opted to enjoin enforcement of the orders only as they pertained to drive-in services. *Id.* at 616. While Maryville Baptist does not decide this case, it is indicative of what might come. Maryville Baptist Church was motivated by a sincerely held belief that Christians should have the ability to meet in person. Similarly, Danville Christian is motivated by a "sincerely held religious belief that it is called by God to have in-person religious and academic instruction for its students." [R. 1 at 25.]

7

Further, although the Governor would like the Court to only compare schools in the context of the executive order and find the order to be one of general applicability, *Maryville* instructs otherwise.  In answering the general applicability question in *Maryville*, the Sixth Circuit questioned why law firms, laundromats, liquor stores, and gun shops could stay open while churches, despite following CDC-approved guidelines, could not.  957 F.3d at 614.  The restrictions which the Sixth Circuit criticized as "inexplicably applied to one group and exempted from another" are similar to those Danville Christian challenges today.  This Court wonders why under this executive order, one would be free to attend a lecture, go to work, or attend a concert, but not attend socially distanced chapel in school or pray together in a classroom that is following strict safety procedures and social distancing.  *Maryville Baptist Church, Inc.*, 957 F.3d at 614–16.  Of even more significance, preschools in the state remain open after this executive order, as do colleges and universities.  [R. 1 at 13; R. 1-4 at 4.]  The prohibition on in-person teaching is not narrowly tailored as required by *Lukumi*.  508 U.S. at 531.

Also earlier this year, the Sixth Circuit granted plaintiffs motion for a preliminary injunction in a context very similar to the *Maryville* opinion.  *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020).   In fact, the appeal was brought by three Maryville Baptist Church congregants who wished to attend church services in person later in the week.  *Id.* at 411.  The court in *Neace* found that "four pages of exceptions in the orders, and the kinds of group activities allowed, remove[d] [the executive orders] from the safe harbor for generally applicable laws" and required strict scrutiny analysis.  *Id.* at 413, 415.  Similarly, after the executive order goes into effect, preschools, colleges, and universities across the Commonwealth will remain open so long as they follow appropriate social distancing requirements.  [R. 1 at 13; R. 1-4 at 4.]  This

executive order permits other, similarly situated groups and institutions to continue meeting while providing a blanket ban on in-person instruction for K-12 schools.

There is ample scientific evidence that Covid-19 is exceptionally contagious. But evidence that the risk of contagion is heightened in a religious setting any more than a secular setting, or in K-12 schools as opposed to preschools, universities, or colleges, is lacking. Dr. Steven Stack, the Commissioner of the Kentucky Department of Health, stated that Kentucky is particularly vulnerable to the spread of Covid-19 in schools because "an unusually high percentage of Kentucky children are cared for by their grandparents and older individuals are at higher risk of severe illness or death from Covid-19. [R. 24-1 at 13.] He further stated, "[s]chools are high volume mixers of people" which can make reduction in the spread of Covid-19 difficult. *Id.* at 12. Of course, that is true of many public settings. In spite of these factors, preschools, colleges, and universities will remain open so long as certain precautions are taken. [R. 1 at 13; R. 1-4 at 4.] Neither Dr. Stack nor the Governor have adequately explained why K-12 schools must close while these other institutions, where many children and young adults who live at home may still expose family members to Covid-19, can remain open.

The Governor's executive order also seems to run counter to CDC recommendations. On November 19, 2020, CDC Director Robert Redford stated, "[t]he truth is, for kids K-12, one of the safest places they can be, from our perspective, is to remain in school," and that it is "counterproductive . . . from a public health point of view, just in containing the epidemic, if there was an emotional response, to say, 'Let's close the schools.'" [R. 1 at 3 citing Ryan Saavedra, "CDC Director: Schools Among 'Safest Places' Kids Can Be, Closing Schools An 'Emotional Response' Not Backed By Data," The Daily Wire, Nov. 19, 2020,

https://www.dailywire.com/news/cdc-director-schools-among-safest-places-kids-can-be-closing-schools-an-emotional-response-not-backed-by-data.]

If social distancing is good enough for offices, colleges, and universities within the Commonwealth, it is good enough for religious private K-12 schools that benefit from constitutional protection.  Ultimately, "[t]he First Amendment protects the right of religious institutions 'to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.'"  *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049, 2055 (2020).[4]

**3**

Because the law is not neutral or generally applicable, it "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Lukumi*, 508 U.S. at 531–32.  However, the Governor argues that given the Covid-19 pandemic, the Court should look to *Jacobson v. Massachusetts*, 197 U.S. 11, 30 (1905), to determine whether Danville Christian can show that the executive order (1) "has no real or substantial relationship to [the emergency]" or (2) "is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law[.]"  Though over a century old, *Jacobson* is arguably the case that most directly speaks to "the expanded scope of a state's police power during times of public health crises[.]"  *Adams & Boyle, P.C. v. Slatery*, 956 F.3d 913, 921–23 (6th Cir. 2020).

The *Jacobson* test gives states considerable leeway in enacting measures during public health emergencies.  However, "even under *Jacobson*, constitutional rights still exist."  *On Fire*

---

[4] Danville Christian's third count alleges a violation of religious entities' First Amendment right to religious autonomy.  [R. 1 at 30.]  Danville Christian argues that Governor Beshear "cannot tell religious institutions and churches that they *can* hold in-person worship services but *cannot* hold in-person schooling."  *Id.*  This autonomy argument is part and parcel of Danville Christian's Free Exercise argument, and therefore the Court will not address it separately.

*Christian Ctr., Inc. v. Fischer*, 453 F. Supp. 3d 901, 912–13 (W.D. Ky. 2020).  And while courts should refrain from second-guessing the efficacy of a state's chosen protective measures, "an acknowledged power of a local community to protect itself against an epidemic ... might go so far beyond what was reasonably required for the safety of the public, as to authorize or compel the courts to interfere[.]"  *Jacobson*, 197 U.S. at 28. Even viewed through the state-friendly lens of *Jacobson*, the prohibition on in-class teaching for religious private schools operating in Kentucky is "beyond what was reasonably required for the safety of the public" and therefore, *Jacobson* does not require the Court to uphold Governor Beshear's injunction.  197 U.S. at 28.

Furthermore, it is important to look at the context of the *Jacobson* opinion in determining its relevance to Governor Beshear's executive order.  "*Jacobson* primarily involved a substantive due process challenge to a local ordinance requiring residents to be vaccinated for small pox." *Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603, 2608 (2020) (Alito, J. dissenting). The Court is skeptical that *Jacobson*, which was written in the context of a substantive due process challenge, has the same force in the context of a statewide executive order that is being challenged under the enumerated rights of the First Amendment.  *Id.*

The Governor also looks to Justice Roberts' concurring opinion in *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (Mem.) (2020).  As this Court explained in *Ramsek v. Beshear*, 468 F. Supp. 3d 904 (E.D. Ky. 2020), there are two reasons as to why Justice Roberts' concurring opinion in *South Bay*, while informative, is not dispositive in this case. First, Justice Roberts analyzed a different executive order as it concerned a separate First Amendment right in a distinct factual circumstance.  Second, and perhaps most importantly, the Court finds significant the procedural context in which the Supreme Court acted.  On review, a denial of injunctive relief pending appeal by the Supreme Court is similar in many ways to a

denial of a writ of certiorari. *See, e.g., Teague v. Lane*, 489 U.S. 288, 296 (1989); *see also Janklow v. Planned Parenthood, Sioux Falls Clinic*, 517 U.S. 1174, 1181 (1996) (Scalia, J. dissenting). Like a denial of writ of certiorari, a variety of considerations underlie a denial of injunctive relief—considerations beyond simply the merits of the case. *See, e.g., Janklow*, 517 U.S. at 1181 (Scalia, J. dissenting) (describing such decisions as "discretionary (and unexplained) denials"); *Brown v. Gilmore*, 533 U.S. 1301 (2001) (Rehnquist, C.J.).

The legal principles applied by the Supreme Court in this context lead naturally to a conclusion that, like opinions accompanying the denial of certiorari, opinions accompanying the denial of injunctive relief pending appeal "cannot have the same effect as decisions on the merits." *Teague*, 489 U.S. at 296; *see also Janklow*, 517 U.S. at 1181 (Scalia, J. dissenting) (explaining the impropriety of lower courts possibly giving authoritative effect to a two-Justice opinion concurring in a denial of an injunctive relief pending appeal).

Notwithstanding the above considerations, certain lower courts have accorded significant weight to Justice Roberts' concurring opinion, without any extended analysis of the precedential considerations laid out above. *See, e.g., Calvary Chapel Lone Mountain v. Sisolak*, 466 F. Supp. 3d 1120 (D. Nev. 2020). At the very least, if the concurring opinion is to be accorded weight, then the fact that no other Justices joined the opinion must be acknowledged and considered. In *Marks v. United States*, the Supreme Court explained that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of the five justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." 430 U.S. 188, 193 (1977). Logically, where a concurring opinion accompanies a decision in which the court did not fully address the merits, like here, the opinion cannot be said to carry *more* weight than an opinion accompanying a

decision on the merits.  At the very most, the grounds set forth by Justice Roberts in support of his decision to deny injunctive relief in *South Bay* should be interpreted as narrowly as possible.  *Id.* at 193.

So, what was the basis for Justice Roberts' decision?  The Governor looks to *South Bay* as an opinion from which this Court should "take [its] cue."  [R. 24 at 9.]  True, in analyzing the California restrictions, Justice Roberts found they "appear[ed] consistent with the Free Exercise Clause of the First Amendment."  *Id.*  And, he further explained that a state has broad latitude in restricting social activities in times of emergency which "should be subject to second-guessing" only where those broad limits are exceeded.  *Id.*  But Justice Roberts' analysis must be viewed in light of the standard applied.

As Justice Roberts noted, the standard for the Supreme Court to grant an injunction pending appeal is a high bar: "This power is used where 'the legal rights at issue are indisputably clear ....'"  *South Bay*, 140 S. Ct. 1613 (citation omitted).  This is so because, as noted above, "unlike a stay, an injunction 'does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld by lower courts.'"  *Respect Maine PAC*, 562 U.S. 996 (cleaned up).  So, applying these principles, Justice Roberts denied relief, concluding that "[t]he notion that it is 'indisputably clear' that the [California] limitations are unconstitutional seems improbable."  *Id.* at 1614.

The Court declines to accord too broad of a precedential effect to Justice Roberts' concurrence in *South Bay*.  A narrow reading is required and simply leads to the conclusion that Justice Roberts found that it was not "indisputably clear" that the California law restricting in-person religious services violated the Free Exercise Clause.  While informative, this conclusion does not create precedent which counsels the same result under the facts of this case.

13

The Governor also points to a recent Sixth Circuit opinion affirming the denial of a preliminary injunction for a private Christian school in Michigan. *Libertas Classical Assn v. Gretchen Whitmer, et al*., No. 20-2085 (6th Cir., Nov. 20, 2020). However, *Libertas* is distinguishable from Danville Christian for several reasons. First, the district court refused to grant the injunction in *Libertas* because there was an unsettled question of state law and the court wanted that issue to be resolved before issuing an injunction. *Id.* Second, in *Libertas*, the school subsequently closed voluntarily, thus belying any claims to "irreparable harm . . . during the pendency of the appeal. *Id.* (citing *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 572 (6th Cir. 2002). Therefore, the *Libertas* opinions does not present a challenge to Danville Christian's claim.

Ultimately, under the Free Exercise Clause, "restrictions on religious exercise that are not 'neutral of general applicability' must survive strict scrutiny." *Calvary Chapel Dayton Valley*, 140 S. Ct. at 2605 (Alito, J. dissenting). Although the efforts by Governor Beshear to prevent the spread of Covid-19 are commendable, the Executive Order bans all in-person instruction for K-12 schools, and this cannot be considered to be narrow tailoring as required under strict scrutiny.

**4**

Danville Christian has established a likelihood of success on the merits with respect to their free exercise claim, and the Court will grant a preliminary injunction on that basis. The likelihood of success on the merits is largely determinative in constitutional challenges like this one, however, the remaining factors also mitigate in favor of Danville Christian. As already explained, Danville Christian's injury is irreparable. *See Elrod*, 427 U.S. at 373, 96 S. Ct. 2673. To stay the prohibition on mass gatherings with respect to religious services which observe the

social distancing guidelines promulgated by the Center for Disease Control, as Danville

Christian has promised to do, does not harm the Governor. Finally, the public interest favors the

enjoinment of a constitutional violation. *See Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d

558, 568 (6th Cir. 1982).[5]

## B

In its motion, Danville Christian also asserts that Executive Order 2020-969 violates the

Establishment Clause of the First Amendment and asks this Court to enjoin Governor Beshear

from enforcing the Order against religious private schools.  [R. 3 at 25; *see* R. 1 at 34.]

Specifically, Danville Christian argues that the Order favors religious organizations that offer in-

person worship over religious organizations that offer in-person schooling, in violation of the

Establishment Clause.  *Id.*

The First Amendment to the United States Constitution, as applied to the states through

the Fourteenth Amendment, *see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940), provides

that "Congress shall make no law respecting an establishment of religion. . . ."  U.S. Const.

amend. 1.  This right guarantees, "at a minimum … [that the government may not] act in a way

which 'establishes a [state] religion or religious faith, or tends to do so.'"  *Lee v. Weisman*, 505

U.S. 577, 577–78 (1992) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 678 (1984)); *Everson v.

Board of Ed. of Ewing*, 530 U.S. 1, 15–16 (1947).  On the other hand, however, "the

Establishment Clause does not compel the government to purge from the public sphere all that in

---

[5] Although Danville Christian also alleges violations of Section 1 and 5 of the Kentucky Constitution, this Court
need not analyze these claims because those Sections provide the same protections found within the United States
Constitution.  *See Michigan C.R. Co. v. Powers*, 201 U.S. 245, 290 (1906) ("Undoubtedly, a Federal court has the
jurisdiction, and when the question is properly presented it may often become its duty to pass upon an alleged
conflict between a statute and the state constitution, even before the question has been considered by state tribunals.
All objections to the validity of the act, whether springing out of the state or of the Federal Constitution, may be
presented in a single suit and call for consideration and determination.").  Thus, notwithstanding the Governor's
sovereign immunity argument, this Court's decision on the federal constitutional claims defuses the merits of the
claim for relief under the Kentucky Constitution.

any way partakes of the religious." *Van Orden v. Perry*, 545 U.S. 677, 699 (2005) (Breyer, S.B., concurring).[6]

The so-called *Lemon* test is "[t]he long-standing (but not always applied) test for determining whether government action violates the Establishment Clause." *Am. Civil Liberties Union of Kentucky v. Grayson Cty., Ky.*, 591 F.3d 837, 844 (6th Cir.2010). The *Lemon* test has been often criticized, and is not consistently used or applied by the Supreme Court. *See Utah Highway Patrol Ass'n v. Am. Atheists, Inc.*, 565 U.S. 994 (2011) (Mem.). However, it has not been officially overruled, and the Sixth Circuit has stated that it is still the proper test for analyzing claims involving the Establishment Clause. *See Satawa v. Macomb Cty. Rd. Comm'n*, 689 F.3d 506, 526 (6th Cir. 2012) ("Although it has lost some of its luster, the test from *Lemon*, as refined by later Supreme Court opinions, guides our Establishment Clause analysis.") (internal citations omitted).

In applying that test, courts generally uphold government action as long as the action or statute 1) has a "secular legislative purpose"; 2) "its principal or primary effect must be one that neither advances nor inhibits religion"; and 3) it does "not foster an excessive government entanglement with religion." *Am. Civil Liberties Union of Kentucky*, 591 F.3d at 844; *Lemon v. Kurtzman,* 403 U.S. 602 (1971); *see also Satawa*, 689 F.3d at 526 (clarifying the use of the *Lemon* test in the Sixth Circuit). "If we cannot answer "yes" to the first question and "no" to the second two, the challenged action violates the Establishment Clause." *Satawa*, 689 F.3d at 526.

---

[6] For a detailed exposition of the historical foundation of the Establishment Clause and the evolving jurisprudence regarding its application, see this Court's opinion in *Ark Encounter, LLC v. Parkinson*, 152 F. Supp. 3d 880 (E.D. Ky. 2016).

The Governor's Order is likely to pass this test. The Order has the secular purpose of slowing the spread of COVID-19; it has the primary effect of limiting school gatherings—both secular and religious; and Danville Christian develops no substantive argument that Governor Beshear's Order fosters government entanglement with religion. Consequently, the Court concludes that Danville Christian is unlikely to succeed on its Establishment Clause claim.

The Court notes that a *Lemon* test analysis may not really be the best fit in this case. Dissenting in *Calvary Chapel Dayton Valley v. Sisolak*, Justice Kavanaugh outlined four categories of law that commonly arise in religion cases, including "laws that expressly treat religious organizations equally to some secular organizations but better or worse than other secular organizations." 140 S. Ct. 2603, 2610 (2020) (Mem). Justice Kavanaugh argued that Supreme Court jurisprudence supported the notion that "the legislature may place religious organizations in the favored exempt category rather than in the disfavored or non-exempt category without causing an Establishment Clause problem. *Id.* (citing *Walz v. Tax Comm'n of City of New York*, 397 U.S. 664 (1970) (opinion of Harlan, J.), *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 14 (1989) (plurality opinion), and *Concerned Citizens of Carderock v. Hubbard*, 84 F. Supp .2d 668 (Md. 2000)). Accepting the logic of Kavanaugh's dissent, the legislature may also place religious organizations in the dis-favored or non-exempt category without causing an Establishment Clause problem. However, this Court need not test Justice Kavanaugh's conclusions in this case, as Danville Christian is unlikely to succeed on its Establishment Clause claim.

## C

Next, the Court turns to Danville Christian's argument that Governor Beshear's school-closure order violates Kentucky's Religious Freedom Restoration Act ("RFRA"). [R. 3 at 27.]

Kentucky's RFRA statute forbids the State from "substantially burden[ing] a person's freedom of religion . . . unless the government proves by clear and convincing evidence that it has a compelling governmental interest. . . ."  Ky. Rev. Stat. 446.350.  The statute defines a "burden" to "include indirect burdens such as withholding benefits, assessing penalties, or an exclusion from programs or access to facilities."  *Id.*  If a burden is imposed, the government "must show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting parties in these cases."  *On Fire Christian Ctr.*, 453 F. Supp. 3d at 913 (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 727 (2014)).

Here, Danville Christian argues that a burden is imposed on them because "[t]here is no question that the Governor's executive order bars 'access' to religious facilities—the Governor, after all, has ordered that no children may attend in-person instruction."  [R. 3 at 27.] Additionally, Danville Christian points out that the Governor's administration has "threatened to revoke the certifications for school employees that do 'not follow the Governor's order.'"  *Id.* at 28.  Danville Christian argues that the Governor cannot provide by clear and convincing evidence that it has a compelling interest in this case and that it has used the least restrictive means to further that interest.  *Id.*  In defense, the Governor presents an array of arguments. However, the Court need not analyze each argument because Danville Christian's state RFRA claim is clearly barred by sovereign immunity.  The Eleventh Amendment to the United States Constitution bars suits against the state.  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 97-98 (1984).  Furthermore, state officials in their official capacities are "arms of the state" and are entitled to assert the State's sovereign immunity on their own behalf.  *See Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005).

Although the Supreme Court has established three exceptions to a state's sovereign immunity, including suits against state officials for injunctive relief challenging the constitutionality of the official's action, suits to which states consent, and suits invoking Congressional statutes pursuant to the Fourteenth Amendment, each exception is inapplicable in this case. *See Ex Parte Young*, 209 U.S. 123 (1908); *see Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984; *see Bd. of Tr. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 364 (2001). First, Danville Christian's claim is not invoking a Congressional statute pursuant to the Fourteenth Amendment, nor has the Governor consented to this suit. [R. 24 at 24.] Regarding the third exception, Governor Beshear cannot be sued in his official capacity in federal court to enforce state law. The Sixth Circuit explains that "because the purposes of *Ex parte Young* do not apply to [lawsuits] designed to bring a State into compliance with state law, the States' constitutional immunity from suit prohibits all state-law claims filed against a State in federal court, whether those claims are monetary or injunctive in nature." *Ernst*, 427 F.3d at 368 (citing *Pennhurst*, 465 U.S. at 106). This conclusion applies even if supplemental jurisdiction otherwise exists. *McNeilus Truck & Mfg., Inc. v. Ohio ex rel. Montgomery*, 226 F.3d 429, 438 (6th Cir. 2000). Thus, because Danville Christian's RFRA claim is solely based on state law and no exception to the Governor's sovereign immunity is applicable, the claim must fail.[7]

### D

As a final matter, the Court considers the scope of the preliminary injunction. The Attorney General urges the Court to apply its injunction statewide rather than limiting its application to Danville Christian. [R. 3 at 31–32.] In *Califano v. Yamasake*, the Supreme Court pointed out that one of the "principles of equity jurisprudence" is that "the scope of injunctive

---

[7] Although the Sixth Circuit in *Maryville* fully analyzed the RFRA claim brought there, the Sixth Circuit indicated that it did so because no sovereign immunity defense had been brought on behalf of the State. 957 F.3d at 613–14.

relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class." *Rodgers v. Bryant*, 942 F.3d 451 (quoting *Califano v. Yamasake*, 442 U.S. 682 (1979)); *see also Trump v. Int'l Refugee Assist. Project*, 137 S. Ct. 2080, 2087 (2017) (per curiam) ("Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents."); *De Beers Consol. Mines Ltd. v. United Stat*es, 325 U.S. 212, 220, 65 S. Ct. (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally.").

Furthermore, the Supreme Court of Kentucky has indicated that the Attorney General has an obligation to serve all members of the Commonwealth.  This obligation includes suing government actors on members' behalf to protect constitutional rights. *See Commonwealth ex rel. Andy Beshear v. Matthew Bevin*, 498 S.W.3d 355, 363 (Ky. 2016) (quoting *Hancock v. Terry Elkhorn Mining Co.*, 503 S.W.2d 710, 715 (Ky. 1974) ("the source of authority of the Attorney General is the people who establish the government, and his primary obligation is to the people . . . The Attorney General, as chief law office of this Commonwealth, is charged with the duty of protecting the interest of all the people. . .")).  In the present case, the Executive Order at issue does not just affect Danville Christian.  The Executive Order applies to all religious schools in Kentucky.  Upon consideration of both judicial precedent and the expansive obligation of the Attorney General to serve all members of the Commonwealth, it becomes apparent that, because the violation established impacts all religious schools in Kentucky, the preliminary injunction must extend statewide.

### III

Tomorrow is a day when we as a nation will pause and reflect and each in our own way express gratitude.  It comes when we are tired but hopeful.  The precedent for America's national day of Thanksgiving in found in the words of Secretary of State William H. Seward as proclaimed by President Lincoln.  That, too, was a time when the nation was tired but hopeful.  And at that challenging moment in our history, "in the midst of a civil war of unequaled magnitude and severity…the laws [were] respected…."[8]  And the Court's ruling today demands no less.

Accordingly, and the Court being otherwise sufficiently advised, it is **ORDERED** as follows:

1. The Emergency Motion for Temporary Restraining Order **[R. 3]**, which the Court will treat as a preliminary injunction, is **GRANTED**;

2. The Governor is **ENJOINED** from enforcing the prohibition on in-person instruction with respect to any religious private school in Kentucky that adheres to applicable social distancing and hygiene guidelines; and

3. Given the Notice of Withdrawal submitted on November 24, 2020, parties' Motion to Intervene **[R. 12]** and Emergency Motion for Temporary Restraining Order **[R. 15]** are **DENIED AS MOOT**.

This the 25th day of November, 2020.

---

[8] Abraham Lincoln, Proclamation of Thanksgiving (Oct. 3, 1863).

Gregory F. Van Tatenhove
United States District Judge